UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LEXAR HOMES, INC., fka HiLINE HOMES, INC., | NO. CV-12-416-JLQ |
| Plaintiff, | **MEMORANDUM OPINION and ORDER GRANTING MOTION FOR COSTS AND ATTORNEYS' FEES PURSUANT TO 17 U.S.C. § 505** |
| vs. | |
| JON PORT and MELISSA PORT, husband and wife, and the marital community, and A HOME DOCTOR, INC., a Washington corporation, dba REAL HOMES, | |
| Defendants. | |

BEFORE THE COURT is Defendants' Motion for Costs and Attorney Fees Pursuant 17 U.S.C. § 505 (ECF No. 52). After obtaining summary judgment as to all claims against them, Defendants now request the court award them $60,873.00 in attorneys' fees and $1,447.70 in costs incurred in the litigation.

## I.    BACKGROUND

On **June 22, 2012**, Plaintiff filed this action against its home building competitor in Wenatchee, Washington alleging four causes of action (1) violation of the Federal Copyright Act, 17 U.S.C. § 502; (2) conversion; (3) violation the Washington Trade Secrets Act, and (4) intentional interference with business relations. As Plaintiff admits in its Response to the Motion before the court, the basis for the institution of this action was the existence of a similar-looking model home built by the Defendant in the same "Sun Valley Estates" development where there are homes constructed by Plaintiff:

Plaintiff...was informed last year by a customer, Jason Nieman, that one of [its]

ORDER - 1

competitors, Jon Port of Real Homes, was informing potential customers that it could build Lexar's copyright-protected plans with only minor modifications. Upon investigation, Lexar and its counsel discovered that Mr. Port was constructing a number of houses that were strikingly similar to two of Lexar's copyright-protected plans. Lexar then filed this lawsuit.

(ECF No. 79 at 1-2).  The Defendants answered and denied the allegations.

On **August 23, 2012,** the court held a telephonic scheduling conference, setting pretrial dates and deadlines which were reflected in the court's Scheduling Order (ECF No. 14).

On **August 29, 2012,** counsel for Defendants, Jess Monnette, sent Plaintiff's counsel their initial disclosures and a letter setting forth the defense position and evidence claiming that the allegedly infringing plan had been independently created at least five years prior to the date the Plaintiff's copyrighted plan was allegedly published. The letter attempted to dissuade Plaintiff from proceeding with the lawsuit stating, "[i]t is clear that Plaintiff's claims of copyright infringement in this case are frivolous and baseless...This case needs to be immediately dismissed."  The letter also discussed the law providing that a prevailing defendant on a copyright claim is entitled to recover attorneys' fees and costs. (ECF No. 81, Ex. 1).

Discovery proceeded.  Defendants propounded interrogatories and requests for production and admission to Plaintiff, and deposed Jason Nieman and Plaintiff representative Rob Eldred.  Though Plaintiff was apparently "skeptical" of Defendants' claim of independent creation (ECF No. 79), the only formal discovery Plaintiff conducted was taking the deposition of Defendant Jon Port *on May 20, 2013* -- the discovery deadline.  (ECF No. 40; ECF No. 53, Ex. 1).

On **September 20, 2012**, Plaintiff filed a Motion for Temporary Restraining Order and Motion to Expedite (ECF Nos. 15, 19) at 6:00 a.m. on September 20, 2012, requesting the court to restrain the Defendants from holding an open house the same day.  Four hours later, the court denied the Motion noting that "[c]ounsel delayed filing the Motion for reasons unknown to the court, despite having called the court *on Monday, September 17, 2012* inquiring regarding a possible hearing date." (ECF No. 22).  In

denying the TRO, the Order cited the fact that "the Memorandum fail[ed] to cite, mention, or analyze the applicable Federal Rule...and accompanying standards governing such requests for extraordinary relief."

**February 1, 2013** was Plaintiff's deadline to file its final list of trial witnesses. Plaintiff failed to comply with the court's Scheduling Order and did not file a witness list until May 20, 2013, after prompting by a Motion in Limine filed by the Defendants. (ECF Nos. 32-34).

On **May 9, 2013**, Defendants moved for summary judgment denying having copied Plaintiff's plans and providing evidence that the Amy Rose plan was independently created years before the 2009 date of first publication of Plaintiff's alleged copyrighted plans. Defendants' evidence of independent creation was not rebutted by Plaintiff. Plaintiff argued in its summary judgment response that Defendants' evidence was "weak," yet presented no evidence of its own "expert or otherwise, tending to show that the allegedly infringing pattern could only have been derived from copyrighted Plan 2248." (ECF No. 50 at 8). Plaintiff's Memorandum in Response to Defendants' Motion for Summary Judgment was seven pages long; three of the seven pages consisted of a numbered list of alleged similarities between the two plans at issue. It cited a single case authority. At no time did Plaintiff request additional time for discovery. (From the summary in ECF No. 75 at 3).

As Defendants had satisfied their burden of demonstrating an absence of evidence to support the element of copying, the court granted Defendants' Motion for Summary Judgment on June 21, 2013 and the same day entered Judgment dismissing the Complaint with prejudice. (ECF Nos 50, 51).

On July 3, 2013, Defendants filed their Motion for Attorneys Fees and Costs (ECF No. 52) pursuant to 17 U.S.C. § 505, requesting the court to award them $54,970.00 in attorney fees and $1,165.83 in costs. Instead of responding to the merits of the Defendants' attorneys fees Motion, Plaintiff asked the court to reserve ruling as it anticipated filing a Motion to Alter the Judgment based upon alleged "new evidence" it had obtained in post-judgment interviews of witnesses. (ECF No. 55). As recounted by

1

the court in its September 4, 2013 Memorandum Opinion and Order Denying Plaintiff's

2   Motion to Alter Judgment:

3          With the discovery period long over and the court's adverse summary judgment
           order in hand, Plaintiff's owners then scrambled about to create and acquire new
4          evidence. Bob Hollis, one of Plaintiff's owners, upon review the court's
           decision,"spoke with his business partners about what to do next, and called a
5          number of our witnesses to give them an update about the case and to see if there
           was any othe[r] information that might be of use."
6

7   (ECF No. 75).  This Order discussed the Plaintiff's apparent tactical decision not to

8   investigate the case thoroughly:

9          In this instance, despite having been given ample time and opportunity to investigate
           the matters, Plaintiff did not investigate obvious leads already in its possession prior
10         to the initiation of the lawsuit, nor take advantage of opportunities to obtain discovery
           during the time period allowed prior to the summary judgment proceedings. Plaintiff
11         knew that former employees, like Ms. Lutes, could have relevant information, yet
           Plaintiff apparently did not seek to discover the names of Mr. Port's former
12         employees. This case was prompted by a similar-looking model home built by the
           Defendant in the same development as Plaintiff, yet no one apparently thought of the
13         owner of the development as a potential witness.  It is Plaintiff's counsel's duty to
           expend the effort to ensure 'the factual contentions have evidentiary support or, if
14         specifically so identified, will likely have evidentiary support after a reasonable
           opportunity for further investigation or discovery.' Rule 59 was not intended to
15         relieve counsel or litigants from the consequence of what appears to be a conscious
           decision not to investigate the case thoroughly, 'however unwise the decision may be
16         in retrospect.' A litigant is bound by its and counsel's choice of litigation procedures
           and tactical decisions. The court concludes each of the declarants could have been
17         discovered through reasonable diligence. Accordingly, the Plaintiff has not carried its
           burden under Rule 59. Though it is unnecessary to analyze the third element, neither
18         Lutes, Hildebrand, or Kelley's declarations would have altered the court's judgment.
           Moreover, the value of scheduling orders, summary judgment and finality in litigation
19         would be eviscerated if losing parties were allowed, after the entry of judgment, to
           initiate and present to the court a more diligent factual and legal investigation.
20
    (ECF No. 75).
21
           Following the court's denial of the Plaintiff's Motion to Alter Judgment,
22
23  Defendants supplemented their request for fees and costs with the costs and fees incurred

24  by defense counsel after the filing of the Motion to Alter the Judgment to September 10,

25  2013.  (ECF Nos. 76-78).  Plaintiff filed a Memorandum in Opposition (ECF No. 79) and

26  Defendants replied (ECF No. 80-81).

27

28

ORDER - 4

1

## II. LEGAL STANDARD

2    Under Section 505 of the Copyright Act, a court has discretion to allow the

3    recovery of full costs to any party in a civil action brought under the Copyright Act. 17

4    U.S.C. § 505. As part of the costs, a court may "also award a reasonable attorney's fee to

5    the prevailing party." *Id*. This fee-shifting provision is symmetrical: costs and attorney's

6    fees are equally available to prevailing Plaintiffs and Defendants. *See Fogerty v.*

7    *Fantasy, Inc.*, 510 U.S. 517, 534 (1994).  Since "a successful defense of a copyright

8    infringement action may further the policies of the Copyright Act every bit as much as a

9    successful prosecution of an infringement claim by the holder of a copyright,"

10   "defendants who seek to advance a variety of meritorious copyright defenses should be

11   encouraged to litigate them to the same extent that plaintiffs are encouraged to litigate

12   meritorious claims of infringement." *Id*. at 527.

13      "Prevailing plaintiffs and prevailing defendants are to be treated alike, but

14   attorney's fees are to be awarded to prevailing parties only as a matter of the court's

15   discretion." *Id*. at 534. "There is no precise rule or formula for making these

16   determinations, but instead equitable discretion should be exercised...." *Id*. (quotation

17   marks omitted).  In determining whether to award a prevailing defendant attorneys' fees

18   the court should consider the following factors (1) defendant's degree of success

19   obtained on the claim, (2) the frivolousness of plaintiff's claim, (3) the objective

20   reasonableness of plaintiff's factual and legal arguments, (4) plaintiff's motivation in

21   bringing the lawsuit, and (5) the need for compensation and deterrence. *Id*. at 558. This

22   does not represent an exhaustive list and all factors need not be met. *Id*. at 559.

23   "'Exceptional circumstances' are not a prerequisite to an award of attorneys fees; district

24   courts may freely award fees, as long as they treat prevailing plaintiffs and prevailing

25   defendants alike and seek to promote the Copyright Act's objectives." *Historical*

26   *Research v. Cabral*, 80 F.3d 377, 378 (9th Cir. 1996).

27

28

### III. ANALYSIS

**A.    Degree of Success**

A party's degree of success in a lawsuit should be considered in determining whether to award attorneys' fees. This factor weighs more in favor of a party who prevailed on the merits, rather than on a technical defense. *See Fantasy, Inc. v. Fogerty*, 94 F.3d 553 (9th Cir. 1996).

Defendants obtained complete success on summary judgment resulting in the dismissal of all four claims asserted against them, including the Copyright Act infringement claim. Defendants prevailed based in part upon Plaintiff's decision not to contest the dismissal of their state law claims, and Plaintiff's apparent tactical decision not to diligently pursue discovery in regards to its copyright claim.  Due to the degree of success, this factor weighs heavily in favor of Defendants. *See e.g., Maljack Productions, Inc. v. Goodtimes Home Video Corp*., 81 F.3d 881, 890 (9th Cir.1996) (noting that a favorable grant of summary judgment on the merits represented "total success" in analyzing this factor).

**B.    Frivolousness**

While it is true the mere fact that Plaintiff lost on summary judgment does not alone establish frivolity, other factors existing in this suggest it. Plaintiff admits that it based its infringement suit on the concerns of third parties and its own surmise and skepticism about the similarities between the designs. Yet copyright protection does not prohibit others from building homes substantially similar to the one depicted in a copyrighted plan-- it prohibits them from *copying*.  Though lacking evidence of copying prior to filing its Complaint, the only formal discovery conducted by Plaintiff was the deposition of the Defendant after the Motion for Summary Judgment had been filed and *on the day of the discovery deadline*.  Though the court's Summary Judgment Order did not focus upon this additional fact, Plaintiff did not and apparently could not produce in discovery evidence which would have been necessary to prove the scope of their alleged copyright (Plaintiff admitted on summary judgment that it had no evidence regarding

what was submitted to the United States Copyright Office related to Plan 2248 or Plan 2576). At the summary judgment stage, the only piece of testimonial evidence Plaintiff supplied was the side by side comparison of two house plans performed by Plaintiff's owner. These facts strongly suggest that Plaintiff had no evidence of and no intention of expending the resources to gather the necessary evidence to establish its copyright or prove any wrongdoing by the Defendants.

The case law similarly focus on the strength of Plaintiff's case to evaluate frivolousness. *See also Entertainment Research Group, Inc. v. Genesis Creative Group, Inc.*, 122 F.3d 1211 (9th Cir.1997) (maintenance of copyright claims for three years without any evidentiary basis), cert. denied, 523 U.S. 1021 (1998); *Fosson v. Palace (Waterland) Ltd.*, 78 F.3d 1448 (9th Cir.1996) (fees awarded to a defendant who prevailed on summary judgment because plaintiff's failure to articulate a theory of liability that would connect one of the defendants to the allegedly infringing act rendered plaintiff's claims frivolous); *Edwards v. Red Farm Studio Co.*, 109 F.3d 80, 81 (1st Cir.1997) (defendants awarded attorneys' fees where plaintiff artist unilaterally and unreasonably rejected a two decade practice with her publisher). In a somewhat analogous case, *Diamond Star Bldg. Corp. v. Sussex Co. Builders, Inc.*, 30 F.3d 503 (4th Cir. 1994), a competing home builder brought a frivolous claim that its copyright for an advertising brochure for a Victorian ranch-style house design was infringed. The Plaintiff had filed suit upon learning the Defendant was using a similar design. In response to the suit, the Defendant advised the Plaintiff that its action was wholly without merit, could not succeed, and that if pursued it would seek sanctions. The court granted judgment as a matter of law after concluding the case was of "absolute insignificance" and "should never have been brought." The Fourth Circuit Court of Appeals concluded the lower court had abused its discretion when the court failed to award attorney's fees to the successful home builders under the Copyright Act, 17 U.S.C.A. § 505.

The Plaintiff's lack of evidence of copying prior to filing its Complaint, combined with the failure to abide by the court's Scheduling Order, or diligently pursue discovery in the face of the claim of independent creation, suggests frivolity and strongly supports a grant of attorney fees to Defendants.

**C.    Motivation**

Parties are improperly motivated if they do not have "a good faith intent to protect a valid interest, but rather a desire to discourage and financially damage a competitor by forcing it into costly litigation." *Yankee Candle Co. v. Bridgewater Candle Co., LLC*, 140 F.Supp.2d 111, 116 (D.Mass. 2001). Defendants believe that "the purpose of this litigation was to force Defendants out of business." (ECF No. 80). Defendants admit they do not have direct proof or evidence tending to show that Plaintiff was acting maliciously or in bad faith. However, the record does contain overtones suggesting a level of animus on Plaintiff's part including: 1) the fact that the parties are competitor builders in a competitive market in the same town; 2) the Plaintiff's attempted baseless restraint of the Defendant's participation in a tour of homes; 3) Plaintiff's admitted skepticism of Defendants' business practices; and 4) the pursuit by Plaintiff's owner-- after the dismissal of the case-- of additional evidence from individuals whom, according to Defendants, all had "personal axes to grind with Defendant Jon Port" (former employees and an individual he had reported to the police).

Nevertheless, the court does not conclude these facts necessarily support an inference of bad faith and the court concludes this factor does not weigh in favor of either side.

**D.    Objective Unreasonableness of the Plaintiff's Factual and Legal Arguments**

The court's two prior opinions granting the Motion for Summary Judgment (ECF No. 50) and Denying the Motion to Alter Judgment (ECF No. 75) set forth in detail the lack of merit in and evidence supporting Plaintiff's copyright infringement claim. Plaintiff's continued pursuit of its claims without the foundational evidence pertaining to its copyright or the alleged copying was objectively unreasonable. Moreover, Plaintiff's

cursory legal argument on summary judgment based solely upon the number of alleged similarities between two house plans disregarded fundamental aspects of the scope of architectural copyright protection: the copyright does not protect ideas, but their expression (*L.A.Printext Industries, Inc v. Aeropostale, Inc.*, 676 F.3d 841 (9th Cir. 2012); copyright does not protect functional or standard design elements (*See e.g.*, 17 U.S.C. § 101 (defining "architectural work" as excluding "individual standard features.")); and infringement of a copyright cannot exist absent *copying* (*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co. Inc.*, 499 U.S. 340, 361 (1991)). In comparison to patent protection, copyrights are relatively easy and less expensive to obtain. Though Plaintiff claims to own 56 copyright registrations related to house plans, these registrations do not give it a monopoly over single level mid-level construction or provide it a reasonable basis to pursue an infringement action based solely upon conjecture and skepticism.

The court concludes this factor weighs in favor of awarding attorney's fees and costs.

**E.    Considerations of Compensation and Deterrence**

Although on notice of Defendant's independent creation claim, Plaintiff proceeded with all of its claims, engaged in minimal discovery of its own, and Defendant had no choice but to engage in its own discovery and expend resources to effectuate the dismissal of Plaintiff's claims. Under these circumstances, the policies behind the Copyright Act would be served by awarding the Defendants' expenses in this litigation. *See Fogerty*, 510 U.S. at 529 (" 'The expense of any letigation [sic] is considerable. Unless, therefore, some provision is made for financial protection to a litigant, if successful, it may not pay a party to defend rights, even if valid, a situation opposed to justice.... It is increasingly recognized that the person who forces another to engage counsel to vindicate, or defend, a right should bear the expense of such engagement and not his successful opponent ....' " (quoting W. Strauss, Damage Provisions of the Copyright Law, Study No. 31 (H. Judiciary Comm. Print 1960))).

On the question of deterrence, there is reason for an award of costs and fees so as to deter this Plaintiff, and other similarly situated plaintiffs, from instituting claims void of facts supporting them and litigating without adequate research based on a cost/benefit analysis that tells such plaintiffs that they can score big if they win and that there will be no adverse consequences if they lose. *See e.g.*, *Earth Flag Ltd. v. Alamo Flag Co*, 154 F.Supp.2d 663, 668 (S.D.N.Y. 2011). Federal courts do not exist so that litigants can roll the dice in copyright litigation which appears "aimed not at promoting expression but at stifling the 'competition' upon which America thrives." *Mattel, Inc. v. MGA Entertainment, Inc.,* 705 F.3d 1108, 1111 (9th Cir. 2013)(quoting and affirming district court's decision awarding defendant fees).

**F.    Amount Awarded**

Under the Copyright Act, 17 U.S.C. § 505, the court must determine a "reasonable" award.

The court's calculation of the total amount of fees and costs requested is based upon the itemized expense documentation.  This amount differs slightly from the totals set forth in Defendants' brief (ECF No. 52) due to the following: 1) the initially requested fees for Mr. Monnette total $20,889 (not $20,899 as set forth at ECF No. 52 at 3); 2) the initially requested fees for Mr. Daly total $21,345 (not $21,357 as set forth at ECF No. 52 at 3); 3) the 8/1/2013 charge in the amount of $212.62 for "computerized research" is included in the calculation of costs (ECF No. 78-1 at 5)(rather than combined with fees as set forth in ECF No. 76 at 2); and 4) the 5/20/2013 charge for $69.25 for the Jon Port deposition transcript has been included in the calculation of costs.

**1.    Attorneys' Fees**

An award of attorneys' fees must be reasonable. 17 U.S.C. § 505. The reasonableness of a party's fee calculation is determined by the "lodestar method." *Morales v. San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996). "The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended

on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth Headset Prods. Liability Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). This lodestar figure may then be adjusted to account for reasonableness of the time expended based on a weighing of the following factors: "(1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases." *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).

Defendants initially retained the law firm of *Monnette & Cawley* to represent them at the institution of this action.  In April 2013, the law firm of *Preg O'Donnell & Gillett, PLLC* was retained by Defendant Real Homes' insurance carrier "to assume primary responsibility for the defense." (ECF No. 53).  Both firms have submitted an itemized record of their claimed fees and costs. Defendants are requesting compensation for a total of 389.9 hours of work and seek a total of $60,873.00 in attorneys fees.  *Monnette & Cawley* varied the billing rates based upon the experience of the attorney performing the work, and *Pregg O'Donnell* billed all of their attorneys at their rate for insurance defense.

| Timekeeper | Hourly Rate | Hours Billed | Claimed Amount |
|---|---|---|---|
| *Monnette & Cawley (7/9/2012-9/10/2013)* | | | |
| Jess Monnette, attorney | $165.00 | 130.6 | $21,549.00 |
| William Monnette, attorney | $225.00 | 5.8 | $1305.00 |
| *subtotal* | | *136.4* | *$22,854* |

| Pregg O'Donnell & Gilbert (4/20/2013 - 9/10/2013) | | | |
|---|---|---|---|
| Jeffrey W. Daly, attorney | $150.00 | 175.9 | $26,385.00 |
| Justin Bolster, attorney | $150.00 | 75.2 | $11,280.00 |
| Mark O'Donnell, attorney | $150.00 | 2.3 | $345.00 |
| Rindy Griffin, paralegal | $90.00 | .1 | $9.00 |
| subtotal | | 253.5 | $38,019 |
| **TOTAL** | | **389.90** | **$60,873.00** |

Though Plaintiff and his counsel do not contest the reasonableness of the rates charged by Plaintiff's counsel *or* the hours expended, the court has an independent obligation to review whether the hours and rates are reasonable.

To determine a reasonable hourly rate, the district court looks to hourly rates prevailing in the relevant legal community for similar work performed by attorneys of comparable skill, experience, and reputation. *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir.2011) (per curiam). The "relevant legal community" is generally the forum in which the district court sits.  *Mendenhall v. NTSB*, 213 F.3d 464, 471 (9th Cir.2000). Based on other cases in this district, the court finds the hourly rates charged in this case for attorneys ($150-$225) and paralegals ($90) are easily within prevailing market rates for copyright defense and reasonable.

The court must next determine whether the time spent on the case - 389.9 hours was reasonable.  The court has also reviewed the detailed billing statements provided by counsel. At the outset the court notes that many of these hours may have been unnecessary but for Plaintiff's tactics.  Over 13 hours of attorney time was devoted to work on a planned response to Plaintiff's Motion for Temporary Restraining Order by the time or shortly after it was filed at 6:00 a.m. on September 20, 2012 (and noted for the same day).   It appears from the billing records that several days prior to filing the TRO Motion, Plaintiff's counsel, in addition to notifying the court, also notified defense counsel of the planned filing.  The court, however, summarily denied the Plaintiff's Motion within four hours of its filing without need for Defendants' response.  Additional

time was devoted to issues concerning compelling discovery responses from Plaintiff, efforts to settle the case while the Summary Judgment Motion was pending, and some trial preparation due to the impending pretrial deadlines set by the court's Scheduling Order.  The number of hours expended in the case was also increased by Plaintiff's filing of a Motion to Alter the Judgment which included a number of affidavits based upon information gathered after the dismissal of the case.

The court has also reviewed the amounts billed for communication by way of correspondence, telephone calls and conferences between the two law firms and amongst co-counsel.  There is no contention and the court does not find any evidence of unnecessary or *excessive* duplicative billing, or excessive communication with co-counsel so as to justify any reduction.

The court concludes the total claimed hours expended are reasonable. Although the court has considered the *Kerr* factors, the parties do not argue for or against any adjustment based upon them.  Likewise, the court's independent review does not support any adjustment based on those factors.  A lengthy discussion of each of them herein is unnecessary in view of the reasonableness of the requested amount of attorneys' fees. The amount is easily within the range of reasonable fees awarded to prevailing defendants and far smaller than fees awarded in some more recent copyright infringement cases.  *See e.g., DuckHole, Inc v. NBCUniversal Media LLC,* 2013 WL 5797204 (C.D.Cal. 2013)(unpublished)(awarding costs and $65,781 in attorneys' fees to defendants for copyright infringement case after court granted motion to dismiss); *Wild v. NBC Universal, Inc., No.* CV 10–3615 at *6 (C.D.Cal. July 18, 2011) (awarding Defendants $112,590.80 in attorneys' fees after dismissing the copyright infringement case because the works lacked in substantial similarity); *Lawrence v. Sony Pictures Entertainment, Inc*, CV-10-4737 (C.D.Cal. October 5, 2011) aff'd 2013 WL 3855410 (9th Cir. 2013)(awarding defendants $200,000 in attorneys fees against pro se Plaintiff who alleged 18 claims for relief against 31 defendants and failed to advance any meaningful evidence on summary judgment); *Maljack Prods., Inc. v. GoodTimes Home*

*Video Corp.*, 81 F.3d 881, 890 (9th Cir.1996) (affirming district court's award of $162,175.04 after granting summary judgment).

**2.   Costs**

Section 505 of the Copyright Act also allows the court in its discretion to award "full costs." 17 U.S.C. § 505. Reasonable costs and expenses are those that "would normally be charged to a fee paying client." *Trustees of Const. Indus. & Laborers Health & Welfare Trust v. Redland Ins. Co.*, 460 F.3d 1253, 1257 (9th Cir.2006). Defendants seek $1447.70 in litigation costs covering photo copies, legal research, mileage, process service fees, and postage.

| Disbursement Type | Amount |
|---|---:|
| *Pregg O'Donnell & Gilbert* | |
| Computerized Research | $703.46 |
| Process Service | $225.20 |
| Mileage for depositions | $354.82 |
| Transcript | $69.25 |
| *Monnette & Cawley* | |
| Copies | $62.09 |
| FedEx Charge | $32.88 |
| **TOTAL** | **$1447.70** |

Defendants' costs appear reasonable based on the case activity. The court awards costs in the amount of $1,447.70.

**IV.   CONCLUSION**

For the reasons stated above, the court **GRANTS** Defendants' Motion for Costs and Attorneys' Fees (ECF No. 52). The court ORDERS that Defendants are entitled to a total award of attorneys' fees and costs in the amount of $62,320.70.  This sum is based upon an attorneys' fee award of $ 60,873.00, and costs in the amount of $1,447.70. The Clerk of the Court is directed to enter an AMENDED JUDGMENT consistent with the foregoing, and CLOSE THE FILE.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

   **IT IS SO ORDERED.**  The Clerk of the Court shall enter this Order, enter an
Amended Judgment, furnish copies to counsel, and CLOSE THE FILE.

   Dated December 11, 2013.

                        s/ Justin L. Quackenbush
                    JUSTIN L. QUACKENBUSH
          SENIOR UNITED STATES DISTRICT JUDGE

ORDER - 15